**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DAWN FRANCIS,

    Plaintiff,

v.                                               Case No. 06-CV-15777-DT

GMAC MORTGAGE,

    Defendant.

                                            /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
AND CONVERTING JUNE 6, 2007 HEARING INTO A STATUS CONFERENCE**

Pending before the court is a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment," filed on April 24, 2007 by Defendant GMAC Mortgage ("GMAC"). The matter has been fully briefed and the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion. The June 6, 2007, hearing will be converted into a status conference to determine an appropriate schedule for the next stage of this litigation.

**I. BACKGROUND**

The facts relevant to Defendant's motion are not in dispute. Plaintiff asserts that, prior to the instant litigation, Old Canal Financial ("Old Canal") attempted to collect on a twelve-year old mortgage debt allegedly owned by Old Canal. (Pl.'s Resp. Br. at 1.) Plaintiff, in turn, sued Old Canal, and the two parties entered into a settlement agreement whereby Old Canal released Plaintiff from the debt in exchange for her dismissal of the lawsuit. (*Id.*) According to Plaintiff, Old Canal thereafter sold the "debt" to GMAC. Old Canal then sent a "goodbye" letter to Plaintiff, informing her of the sale

and providing GMAC's contact information.  (*Id.;* 6/13/06 "Goodbye Letter," Def.'s Ex. A.)

Plaintiff immediately sent GMAC a letter, enclosing a copy of the settlement agreement between herself and Old Canal, and explaining that she had been released from the alleged mortgage debt.  (6/29/06 letter, Def.'s Ex. B.)  Plaintiff asserted that she did not owe the debt, the debt was not valid, and GMAC should not attempt to collect on it.  (*Id.*)  The subject line of Plaintiff's letter stated: "Your Account Number: B001305055; Dispute and Qualified Written Request and FDCPA [D]emand for Validation."  *Id.*

In response to her June 29 letter, Plaintiff received two letters from GMAC's "Voice of the Customer" department.[1]  The first letter, dated August 4, 2006, states:

> I would like to thank you for contacting GMAC Mortgage Corporation concerning your mortgage account.
>
> This will acknowledge receipt of your letter of June 29, 2006.  We will review this matter and provide you with a written response.  Should you need to contact me directly, you may reach me at 888-462-2864, extension 5750.

(8/4/06 letter, Def.'s Ex. C.)  The second letter was sent September 22, 2006, and states:

> Please be advised that this letter will serve as our response to your qualified written request regarding the above-referenced loan.
>
> The Mutual Release and Settlement Agreement that you have provided is not sufficient to terminate your obligations to GMAC Mortgage Corp.  After

---

[1] Plaintiff claims that she also received five letters from a separate department in GMAC: on July 20, September 21, September 29, October 31, and November 30, 2006. (Pl.'s Exs. D-H.)  However, the content of these letters are not at issue for purposes of the current motion.

> a thorough review, based on the information that you provided, it does not give us enough detail to grant your request for release of mortgage. We would need additional information to research.
>
> Please provide a copy of the executed Release of Mortgage from Old Canal or any other documentation that would prove that this loan has been released.
>
> If you should have any further questions or concerns, please contact me directly at 888-462-2864 extension 5750.

(9/22/06 letter, Def.'s Ex. D.)

Plaintiff alleges that GMAC did not accept the validity of Plaintiff's explanations, and continued collection activities.[2] Plaintiff initiated this action on December 29, 2006, asserting two counts against GMAC. In her first count, Plaintiff asserts an individual claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, alleging that GMAC violated the FDCPA by attempting to collect the alleged debt from Plaintiff. (Compl. at 5.) In her second claim, Plaintiff asserts that in the two "Voice of the Customer" letters, GMAC failed to include the disclosures required under the FDCPA, 15 U.S.C. § 1692e(11). (*Id.* at 3-4, 5.)[3] In her second claim, Plaintiff seeks class action status on behalf of herself and others similarly situated. (*Id.* at 3-4, 5.)

After the answer was filed, the court conducted a scheduling conference, at which time the parties agreed that before beginning extensive discovery, the court should determine the preliminary legal question of whether the two "Voice of the

---

[2]GMAC disputes this allegation, but this dispute is not relevant to the instant motion.

[3]The initial complaint did not specify which written communications did not contain the required disclosures, but after subsequent voluntary discovery between counsel, the parties agree that the only two letters at issue are the two "Voice of the Customer" letters.

Customer" letters violated the FDCPA. (3/05/07 Order.) The court therefore set a preliminary schedule to resolve this issue, and Defendant timely complied with the schedule by filing the instant motion to dismiss.

## II. STANDARD

Defendant brings its motion under Federal Rule of Civil Procedure 12(b)(6), but it is more properly analyzed under Rule 12(c). Rule 12(c), which governs motions for judgment on the pleadings, is essentially identical in substance to the standard for summary judgment under Rule 56. *Kramer v. Van Dyke Public Schools*, 918 F. Supp. 1100, 1103-04 (E.D. Mich. 1996). A motion for judgment on the pleadings "tests whether a claim has been adequately stated in the complaint" by examining the complaint in the light most favorable to the nonmoving party to see whether the complaint "sets forth allegations sufficient to make out the elements of a right to relief." *Ellis v. Target Stores, Inc.*, 842 F. Supp. 965, 969 (W.D. Mich. 1993); *see also Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987) ("The complaint must be construed in the light most favorable to plaintiff, and its well-pleaded facts must be accepted as true."). A court should grant a motion for judgment on the pleadings when the moving party establishes that no material issue of fact remains to be resolved and that the moving party is entitled to judgment as a matter of law. *Sage Inter., Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381, 383 (E.D. Mich. 1982).

Under Rule 12(c), a motion for judgment on the pleadings may be deemed a Rule 56 motion for summary judgment when matters outside of the pleadings are presented. *Sage*, 556 F. Supp. at 383. It is within the court's discretion, however, to treat the motion as one under Rule 12(c) or as one under Rule 56. *Id.* at 383-84.

## III.  DISCUSSION

Defendant's motion only addresses Plaintiff's class allegations under 15 U.S.C. § 1692e(11).  Thus, contrary to Defendant's assertions, its motion, even if granted, will not resolve the entirety of this litigation.  (*See* Reply at 2.)[4]  If granted, Defendant's motion leaves unchallenged Count I of Plaintiff's complaint, which alleges that Defendant violated the FDCPA by attempting to collect the alleged debt from Plaintiff.  (Compl. at 5.)

The parties agree, however, that Count II of Plaintiff's complaint, containing the class allegations, hinges on the preliminary legal question of whether the two "Voice of the Customer" letters violate the FDCPA.  Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  This prohibition includes

> The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e(11).  There is no dispute between the parties that the two "Voice of the Customer" letters did not contain the notices specified in 15 U.S.C. § 1692e(11).  Rather, the parties disagree as to whether the § 1692e(11) notices were *required* under the facts of this case.  Defendant argues that the FDCPA was not meant to, and does

---

[4]Indeed, even at the February 27, 2007 conference, counsel agreed that Defendant's motion would only challenge a *portion* of Plaintiff's complaint, that which was related to the class action.

5

not, cover the types of communications found in the two "Voice of the Customer" letters, while Plaintiff urges a broader reading of the FDCPA.

Specifically, Plaintiff argues that the notices specified in § 1692e(11) are required in, essentially, all "communications" sent by a debt collector to the consumer. Citing the statutory definition of the term "communication," Plaintiff asserts that Congress intended a broad interpretation of "communication," and the two relevant letters fall within that broad interpretation. Under 15 U.S.C. § 1692a(2), "[t]he term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Plaintiff contends that the two "Voice of the Customer" letters fall within this definition because they purportedly (1) convey information (2) regarding a debt (3) directly or indirectly to any person through any medium. (Pl.'s Resp. Br. at 4-5.) The court disagrees.

First, the court does not accept the proposition that all "communications" sent by a debt collector to a consumer must contain the notices specified by § 1692e(11). While § 1692e(11) applies to "communications," §1692(e) generally prohibits "false, deceptive, or misleading representation or means *in connection with the collection of any debt*." 15 U.S.C. § 1692e (emphasis added). It is fundamentally the general statutory prohibition which gives rise to the cause of action, admittedly as further defined by the respective sub-parts. Nonetheless, the court's initial inquiry focuses on whether the two letters were sent "in connection with the collection of [a] debt." *Id.* They were not.

Although the letters were sent by a debt collector and, therefore, perhaps *remotely related* to Plaintiff's alleged debt, the letters were, in context, undisputedly sent

in response to an inquiry made by Plaintiff.  The first letter amounts to nothing more than an acknowledgment of receipt of Plaintiff's June 29, 2006 letter.  The second letter was similarly not sent in connection with the collection of Plaintiff's alleged debt, but rather in connection with Plaintiff's June 29, 2006 inquiry.  To the extent the second letter sought any additional information from Plaintiff (or stated that Plaintiff could voluntarily send in further information), it was in connection with the prospect of a potential *discharge* of Plaintiff's mortgage, rather than its collection.  The letters were, on their face, in the nature of a customer service response, rather than a debt collection demand.  Neither letter provided terms of payment or deadlines, threatened further collection proceedings, or, indeed, demanded payment in any form.  While the court does not hold that any of these actions are necessarily required to fall within the scope of § 1692e, they would have been at least indicia of actions taken "in connection with the collection of [a] debt," as opposed to customer service actions taken in response to an inquiry.  *See Salsbury v. Trac A Chec, Inc.,* 365 F. Supp. 2d 939, 942 (C.D.Ill. 2005) (holding that phone calls made to inform the plaintiff that the defendant had confirmed his representation by counsel and would no longer be contacting him were not communications under the FDCPA "because it is not in connection with the collection of a debt"); *see also Buckley v. Bass & Associates, P.C.,* No. 99-4044, 2000 WL 1006568, *2 (N.D. Ill. July 19, 2000) ("On its face, the Bass letter is a request for information about plaintiff's bankruptcy status, sent by Bass to the plaintiff after learning that plaintiff may have filed for bankruptcy. There is nothing that indicates that this letter is an attempt to collect a debt. Certainly a letter that simply requests bankruptcy information is not the

7

type of letter that can be reasonably placed in the category describing a "communication in connection with the collection of a debt" under the ambit of the FDCPA.").

Further, even if the court were to accept Plaintiff's argument that all "communications," regardless of whether they were sent in connection with the collection of a debt, are governed by § 1692e(11), the court is not persuaded that the two letters at issue meet the definition of "communications." The definition of "communication" includes "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). The two letters at issue simply do not convey any information regarding Plaintiff's alleged debt. *Geiger v. Creditors Interchange, Inc.*, 59 F. App'x 803, 804 (6th Cir. 2003) ("Moreover, because [the defendant's] letter was sent in response to [the plaintiff's] charge that [the defendant] had violated the FDCPA, it was not a communication conveying information regarding a debt and did not even require the notification language from § 1692e(11).") (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir.1999)); *see also Knight v. Schulman,* 102 F. Supp. 2d 867, 872-73 (S.D. Ohio 1999) (granting summary judgment under former version of the FDCPA where the letter was not a "communication," but instead "informed the [p]laintiff that her check had been received and that the judgment and lien would be released and the foreclosure action dismissed").

Plaintiff argues that the letters contained information regarding Plaintiff's challenge to the validity of her debt, and therefore necessarily contained information regarding her debt. Plaintiff intimates that all communications from a debt collector would fall within the scope of the FDCPA because they necessarily convey information relating, however tangentially, to the disputed debt. If Plaintiff's argument were

accepted, so long as the letter referred to the debt in any manner, even by simply reciting the account number, it would convey information regarding a debt. All communications from the debt collector to the consumer would likely fall within this category. If Congress had intended the FDCPA's scope to be so broad, however, it could have simply prohibited communications, in any form, from a debt collector to a consumer without the specified notices. Under the current version of the statute, however, the FDCPA cannot be interpreted so broadly. *See Geiger*, 59 F. App'x at 804 ("[The plaintiff's] argument that the debt collector warning language of 15 U.S.C. § 1692e(11) must be incorporated into every communication between a debt collector and a consumer is without merit."); *Buckley,* 2000 WL 1006568, at *3 ("Although the name of the alleged creditor and the account number associated with the alleged debt are mentioned in the letter, taking the letter as a whole, we find that it is clear that the purpose of the letter was to ascertain information about the bankruptcy proceeding. The letter in our case merely requests information regarding the status of plaintiff's bankruptcy proceedings.")

Both parties devote a substantial majority of their briefs arguing whether the court should apply the Seventh Circuit's reasoning in *Bailey v. Security Nat. Servicing Corp.,* 154 F.3d 384, 388-89 (7th Cir. 1998). In *Bailey*, the court held in the alternative that:

> It is worth noting that the plaintiffs lose for a different reason, too. Under the law only communications "in connection with the collection of any debt" (see 15 U.S.C. §§ 1692e, 1692g) fall under the ambit of the Act, and the defendants' letters cannot reasonably be placed in that category. The important letter dated January 4 does not "demand" any payment whatsoever, but merely informs the Baileys about "the current status" of their account. The due dates listed in the letter are all prospective. Surely this is not the type of dunning letter that describes a communication related to "the collection" of a debt. Chief Judge Posner drafted a

> prototypical (and lawful) dunning letter in *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir.1997), which we promised would create a safe haven for debt collectors, at least in this circuit. That letter demands an overdue credit card balance; the letter in our case demands nothing, and doesn't even imply that anything owed under the Baileys' forbearance agreement is overdue. At most the letter contains a warning that a failure to pay the monthly installments (in other words, default a second time) will mean that the forbearance agreement becomes null and void, resulting in acceleration. A warning that something bad might happen if payment is not kept current is not a dun, nor does it seek to collect any debt, but rather the opposite because it tries to prevent the circumstance wherein payments are missed and a real dun must be mailed.

*Id.* Defendant argues that, under *Bailey*, a letter must affirmatively demand payment in order to fall under the FDCPA. Plaintiff argues that *Bailey* can be distinguished from the facts of this case and that *Bailey*'s reasoning was dicta, has not been adopted in this circuit and was based on the former version of the FDCPA. Plaintiff further argues that accepting Defendant's interpretation of *Bailey* and holding that the letter must demand payment would render the FDCPA and subsequent case law an "unworkable mess." (Pl.'s Resp. Br. at 11.)

The court need not engage in an in-depth analysis of whether *Bailey* was correctly decided and, if so, whether the quoted language was dicta, was over-ruled by statutory amendment or is otherwise distinguishable from the facts of this case. Aside from the fact that *Bailey* is Seventh Circuit law which is, at most, persuasive authority, the court has already determined, without reliance on *Bailey*, that the letters at issue do not fall under the scope of the FDCPA. Thus, other than to note that *Bailey* appears to stand for the unremarkable position that the communications in question must fall within the scope of the FDCPA, the court will not comment further on the applicability of *Bailey* to the facts of this case.

For the reasons stated above, the court holds that the pertinent letters were not made "in connection with the collection of [a] debt" under § 1692e and do not constitute "communications" under by § 1692e(11). Accordingly, Defendant's motion to dismiss will be granted.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" [Dkt. # 9] is GRANTED and Count II of Plaintiff's complaint, containing Plaintiff's class allegations, are DISMISSED.

IT IS FURTHER ORDERED that the June 6, 2007 hearing will be converted to a status conference.

    S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 6, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 6, 2007, by electronic and/or ordinary mail.

    S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522